**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JAMES DANIELS, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-1586** |
| **TOURO INFIRMARY, ET AL.** | **SECTION "B"(2)** |

**ORDER AND REASONS**

Before the Court is Plaintiff James Daniels' Motion to Remand and responsive pleading. (Rec. Doc. Nos. 12 and 27).  In response, Defendant DePuy Orthopaedics, Inc., ("DePuy") filed opposition thereto.  (Rec. Doc. No. 27).  Accordingly, and for the reasons pronounced below, **IT IS ORDERED** that Plaintiff's Motion to Remand (Rec. Doc. No. 12) be **DENIED**.

Cause of Action and Facts of the Case:

The immediate case arises from three allegedly defective plastic Tibial Inserts, manufactured by Johnson & Johnson (first surgery) and DePuy (second and third surgeries). (Rec. Doc. No. 12-1 at 2).  Plaintiff alleges that on the dates of Plaintiff's implants, the Tibial Inserts had exceeded their shelf life. (Id.).  Consequently, Plaintiff contends that once they were implanted, they were subject to premature deterioration. (Id.).  The alleged degeneration of the plastic material in the knee caused bone loss,

1

loosening of the knee prosthesis, severe knee pain, and early failure of the implants.  (Id.).

Plaintiff sued the manufacturers of the Tibial Inserts, Johnson & Johnson and DePuy.  Additionally, Plaintiff sued Touro Infirmary A/K/A Touro Hospital A/K/A Touro Clinic ("Touro") asserting that it failed to adequately monitor the age of the Tibial Inserts to ensure that their shelf life had not exceeded. Finally, Plaintiff sued Mark Starring, the Louisiana Distributor, alleging that Starring should have known and warned of the defects of the products.

On July 6, 2011, DePuy removed the instant action to federal court on the grounds that Touro and Starring had been fraudulently joined.  In response, Plaintiff moves for remand, asserting that numerous valid causes of action lie against the Louisiana defendants.

<u>Law and Analysis</u>

<u>Motion to Remand:</u>

Motions to remand to state court are governed by 28 U.S.C. §1447 (c), which provides that "[i]f at any time before the final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Cohen v. Safeco Ins. Co.,* No. 08-707, 2008 WL 1730537, at *1 (E.D. La. Apr. 9, 2008). The removing party bears the burden of showing that federal jurisdiction exists and therefore that removal was proper. *Allen*

*v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir. 1995). In assessing whether removal is appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed. *See, e.g., Manguno v. Prudential Pro. & Cas. Ins. Co.,* 276 F. 3d 720, 723 (5th Cir. 2002). A case with diverse parties may be removed "unless it 'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Asociacion Nacional de Pescadores a Pequena Escala o Artesnales de Colombia v. Dow Quimica de Colombia S.A. ("ANPAC"),* 988 F.2d 559, 564 (5th Cir. 1993) (*quoting St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289 (1938; *see also Marcel v. Pool Co.,* 5 F.3d 81, 84 (5th Cir. 1993)).

**<u>Fraudulent Joinder:</u>**

The removing party bears a heavy burden in demonstrating the fraudulent joinder of non-diverse defendants and must demonstrate that there is no possible way that the plaintiff would prevail against the non-diverse defendant in state court. *Ford v. Elsbury*, 32 F.3d 931, 935 (5th Cir.1994)(citing *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir.1981)). In determining whether plaintiffs have fraudulently joined a non-diverse defendant, the Court must construe all ambiguities in the controlling state law

3

and all disputed questions of fact in favor of plaintiffs. *Id*. While the Court should not "pretry" the case, it may consider summary judgment type evidence. *Id*.   Whether or not plaintiffs fraudulently joined the non-diverse defendant is based on an analysis of the causes of action alleged in the state court petition at the time of removal. *Tedder v. F.M.C. Corp.*, 590 F.2d 115, 116 (5th Cir. 1979) (whether case properly removed is determined by reference to the allegations in plaintiff's state court pleadings).

**Touro:**

As an initial matter, Plaintiff failed to exhaust his administrative remedies under the LMMA and, thus, Touro was improperly joined. As such, his immediate claim is premature. The claims against Touro all arise from the alleged defects of the Tibial Inserts. Accordingly, these claims fall within the purview of the LMMA, its definitions of "malpractice"[1] and "health care"[2]

[1] LA. REV. STAT. §40:1299.41(A)(8) states, in pertinent part:

  "[M]alpractice" includes "all legal responsibility of a health care provider arising from . . . defects in or failures of prosthetic devices implanted in or used on or in the person of a patient."

[2] LA. REV. STAT. §40:1299.41(A)(9) states, in pertinent part:

  "'Health care' means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement, or during or relating to or in connection with the procurement of human blood or blood components."

and, thus, must be submitted to a medical review panel.[3] According to the record evidence, plaintiff has failed to submit his claims against Touro before the medical review panel, therefore, these claims are premature.

**Starring:**

First, the *Diaz* Court found that "unlike a manufacturer, a non-manufacturing seller of a product is not presumed to have knowledge of a product's vices, and it is not required to inspect the product it sells prior to sale to determine the possibility of any inherent vices or defects in the product." *Diaz v. Goodyear*, 2008 WL 4528186, at 6 (M.D. La. 10/12/2008)(citations omitted). Here, Plaintiff failed to establish that Starring had actual knowledge of the Tibial Inserts' defective nature. Mere alleged constructive knowledge is not enough to establish a negligence claim. *Id*. Plaintiff's proffering of Dr. Pugh's opinion (Rec. Doc. No. 27 at Exh. P-1) about the prevalence of literature on the phenomenon of the oxidation of polyethylene Tibial Inserts does not prove that Defendant had actual knowledge that the Tibial Inserts at issue were defective or subject to deterioration.

Second, Plaintiff's redhibition claim must also fail because there is no evidence that Starring had ownership of the inventory

---

[3] La. REV. STAT. § 40:1299.47(B)(1)(a)(i) states, in pertinent part:

"[N]o action against a health care provider . . . may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel."

at issue. The *Ahrens* Court determined that "Plaintiffs have made no allegations and have submitted no evidence that [the distributor] possessed an ownership interest in the leads.  Accordingly, there is no possibility that [P]laintiffs can maintain a redhibitory action against [the distributor]." *Ahrens v. TPLC*, 955 F.Supp. 54, 58 (E.D.La. 2/10/1997).  Further, despite Plaintiff's reliance on a Sales Representative Agreement and the Louisiana Products Liability Act ("LPLA") definition of a seller, this is not enough to prove that Defendant was a seller as defined for a redhibition claim.[4]

---

4

    Plaintiffs' argument that the Court should use the LPLA's definition of "seller" in this redhibitory action is unpersuasive. Plaintiffs have provided no authority in support of why the Court should use the definition of seller contained in the LPLA, upon which none of Plaintiffs' claims against Ball rely, instead of the established jurisprudential definition of seller under redhibition, the only theory upon which Plaintiffs' claim against Ball relies. Accordingly, the Court declines to adopt this novel definition of seller for the purposes of a redhibitory action.

    Nor does Plaintiffs' reliance on selected excerpts of the August 29, 1986 Sales Representative Agreement between Ball and TPLC (the "Agreement") establish that Ball is a seller under redhibition. The Agreement does not provide for Ball to obtain any ownership interest in the leads. It simply requires Ball to make its best efforts to procure sales of the leads on behalf of TPLC. As the exclusive sales representative of TPLC for the leads, Ball cannot be a seller under redhibition when it had no ownership interest in the leads.

*Ahrens v. TPLC*, 955 F.Supp. 54, 57-58 (E.D.La. 2/10/1997).

 Further, while Plaintiff proffers Starring's testimony from a preliminary injunction hearing, in which he testifies that he

Third, Plaintiff proffers little evidence, outside of his allegations and alleged promotional material from Starring's website, to support his claim that Starring made negligent and intentional misrepresentations about DePuy's products.  As such, this claim must fail.

Accordingly, and for the reasons pronounced above, **IT IS ORDERED** that Plaintiff's Motion to Remand (Rec. Doc. No. 12) is **DENIED**.

New Orleans, Louisiana, this 7th day of December, 2011.

UNITED STATES DISTRICT JUDGE

---

made "sales" and had a "sales force," this is still not enough to establish him as a seller for a redhibition claim.